## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

DAVID CUNNINGHAM,

      Plaintiff,

v.                                  Case No: 5:15-cv-480-Oc-30PRL

SCHOOL BOARD OF LAKE COUNTY,
FLORIDA and SUSAN MOXLEY,

      Defendants.

_____

## ORDER

THIS CAUSE is before the Court on Defendants' Motion to Dismiss Amended Complaint (Dkt. 15) and Plaintiff's Response in Opposition (Dkt. 20). Three of the nine counts in Plaintiff's amended complaint seek punitive damages. Defendants also move to strike those requests as improperly pled. The Court has reviewed the pleadings and the applicable law and concludes that the motion should be granted in part and denied in part as specified below.

## FACTUAL BACKGROUND

Plaintiff David Cunningham is an African-American male, and he has been employed by the Lake County (Florida) Public Schools since 1983. (Cunningham Amended Complaint, Dkt. 14, p. 2). In the summer of 2010, Defendant School Board appointed Cunningham principal of Eustis Middle School. On July 1, 2014, the School Board renewed Cunningham's employment contract, which identified his position as "Principal-Middle," for a period of one year. (Cunningham Contract, Dkt. 14, p. 17).

Cunningham's employment contract stated that Cunningham would perform his services in the position of principal "in a school or applicable site as designated by the School Board." (Id.). The contract also stated that "[t]he School Board may, upon recommendation of the Superintendent of Schools[,] transfer and assign [Cunningham] to a position in any other school or site of the district, provided that the salary" not be altered. (Id.). The contract authorized Cunningham's termination or suspension "only for just cause."

According to allegations in his amended complaint, Cunningham performed his duties as principal with distinction and was never, at any point during his tenure, disciplined or counseled. (Id. at 2). Yet on July 31, 2014, the School Board Superintendent, Defendant Moxley, unilaterally and without explanation reassigned Cunningham to the position of social studies teacher at another Lake County school. (Id. at 3). This transfer, Cunningham alleges, though it did not alter his pay, was in fact a demotion and was done in retaliation for public remarks Cunningham made at a School Board meeting just days before. Those remarks concerned matters of public concern, such as "academic assessments, diminished district-wide achievement, and budgetary issues," and were germane to a school board meeting. (Id.).

Cunningham appeared before the School Board in an effort to have Moxley's decision reversed, but the School Board voted to uphold the transfer. Cunningham later filed a complaint with the U.S. Equal Employment Opportunity Commission, which issued him a right-to-sue notice.

Cunningham filed this lawsuit on September 21, 2015. It generally alleges that the School Board and Moxley deprived Cunningham of his constitutional rights, retaliated against him for having exercised those rights and on the basis of his race, treated him differently because of his race, and breached his employment contract.

More specifically, Cunningham's amended complaint contains nine counts. Count I is a claim under 42 U.S.C. § 1983 alleging that the School Board violated Cunningham's First Amendment right to free speech. Count II, also a 1983 claim, alleges that the School Board denied him due process of law. Count III is also a 1983 First Amendment claim, but against Moxley in her official and individual capacities. Count IV is a 1983 due process claim against Moxley in her official and individual capacities. Count V is a claim against the School Board, under Title VII of the Civil Rights Act, for racially motivated disparate treatment and retaliation. Count VI also alleges racially motivated disparate treatment and retaliation against the School Board, but in violation of the Florida Civil Rights Act (FCRA). Count VII claims racial discrimination against the School Board in violation of 42 U.S.C. § 1981. Count VIII makes the same claim against Moxley, in her official and individual capacities. Finally, Count IX claims that the School Board breached Cunningham's employment contract.

Cunningham's amended complaint makes five additional allegations that are now relevant: (1) that Cunningham's employment contract conferred on him a property right; (2) that non-African-American School Board employees regularly make critical comments at School Board meetings with no consequence; (3) that the School Board and Moxley's actions were done with malice or reckless disregard to his federally and state protected

rights; (4) that Moxley knew or should have known of Cunningham's right to be free from retaliation for exercising protected rights and of his right to be free from race discrimination; and (5) that the School Board's constitutional violations occurred by reason of an official policy or the ratification of Moxley's unconstitutional acts.

## DISCUSSION

The School Board and Moxley move to dismiss all counts of the amended complaint on the grounds that Cunningham, in each count, has failed to allege facts sufficient to state a claim on which relief may be granted. Defendants also move to strike, in Counts III, IV, and VIII, Cunningham's plea for punitive damages. After detailing the appropriate legal standard, the Court will first dismiss several counts on the grounds that they are duplicative. Then the Court will evaluate those that remain.

## Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim on which relief can be granted. When reviewing a motion to dismiss, courts must limit their consideration to the well-pleaded allegations, documents central to or referred to in the complaint, and matters judicially noticed. *See La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (internal citations omitted); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Furthermore, they must accept all factual allegations contained in the complaint as true, and view the facts in a light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93-94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007).

Legal conclusions, however, "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). In fact, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). To survive a motion to dismiss, a complaint must instead contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citations omitted). This plausibility standard is met when the plaintiff pleads enough factual content to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

**Duplicative Counts**

Section 1983 claims against state agents in their official capacities "generally represent only another way of pleading an action against an entity of which an officer is an agent," not against the officer individually. *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L. Ed. 2d 114 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)); *see also Penley v. Eslinger*, 605 F.3d 843, 854–55 (11th Cir. 2010). In other words, official-capacity suits against policymakers are effectively suits against the government entity. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1115 (11th Cir. 2005). Allowing counts of this kind to remain only creates the possibility of jury confusion. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 2005).

Here, Cunningham has pled—in Counts III, IV, and VIII—Section 1983 claims against Moxley in both her individual and official capacities despite pleading identical claims against the School Board in Counts I, II, and VII. The Court cannot countenance this kind of confusing pleading; accordingly, Counts III, IV, and VIII will be dismissed. *Cf. C.P. by and through Perez v. Collier Cnty.*, No: 2:15-cv-238-FtM-29CM, 2015 WL 7272683, \*2 (M.D. Fla. Nov. 18, 2015).[1] Cunningham will be granted leave to adequately state a cause of action against Moxley in her individual capacity. *See generally id.*[2]

As these dismissed counts are the same ones for which Cunningham seeks punitive damages, Defendants' motion to strike Cunningham's requests for punitive damages is denied as moot.

## Section 1981 and 1983, Title VII, and FCRA Claims

42 U.S.C. § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to the full and equal benefit of all laws . . . ." Section 1981, however, "does not provide a cause of action against state actors." *Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1337 (11th Cir. 2008). Instead, allegations of 1981 violations must be pursued under Section 1983, which permits private causes of action against state actors for violations of constitutional rights. *Baker*, 531 F.3d at 1337;

---

[1] Counts III and VIII will be dismissed without prejudice, and, on these same grounds, i.e. that it is duplicative, Count IV should be as well. But see Section III of this Order below, entitled "Due Process Claims." There, Count IV will be dismissed with prejudice on different grounds.

[2] Should Cunningham choose this course of action, he is advised to take heed of the other portions of this Order concerning the adequacy of factual allegations to survive a motion to dismiss.

42 U.S.C. § 1983. Courts in the Eleventh Circuit, when faced with Section 1981 claims alleging racial discrimination, convert them into Section 1983 claims. *See Bryant v. Jones*, 575 F.3d 1281, 1288 n. 1 (11th Cir. 2009); *Busby v. City of Orlando*, 931 F.2d 764, 771 n. 6 (11th Cir. 1991); *accord Betts v. Conecuh Cnty. Bd. of Educ.*, No. 13-0356-CG-N, 2014 WL 7411670, *6 (S.D. Ala. Dec. 30, 2014). Cunningham's Count VII, a hybrid 1981/1983 claim for disparate racial treatment, will be so converted.

That leaves the following six counts for the Court's consideration, all against the School Board: Count I, a 1983 claim alleging a First Amendment violation; Count II, a 1983 claim alleging a due process violation; Count V, a Title VII claim alleging retaliation on the basis of race; Count VI, an FCRA claim alleging retaliation and disparate treatment on the basis of race; Count VII, a 1983 claim alleging racial discrimination; and Count IX, a claim for breach of contract.

Many of these claims, however, are subject to the same legal analysis. Retaliation claims brought under Section 1983, for example, require the same proof as claims brought under Title VII. *Gant v. Kash'n Karry Food Stores, Inc.*, 390 F. App'x 943, 945 (11th Cir. 2010) (citing *Standard v. A.B.E.L. Services, Inc.,* 161 F.3d 1318, 1330 (11th Cir. 1998)). In order to establish a prima facie case of retaliatory harassment under either legal framework, a plaintiff must show (1) that he engaged in a statutorily protected activity or expression, (2) that he suffered a materially adverse employment action, and (3) that there was some causal relation between the two events. *McCann v. Tillman,* 526 F.3d 1370, 1375 (11th Cir. 2008).

Likewise, disparate treatment claims under Title VII and Section 1983 require the same proof. Specifically, a plaintiff must show (1) that he belongs to a protected class, (2) that he was qualified to do the job, (3) that he was subjected to an adverse employment action, and (4) that his employer treated similarly situated employees outside her class more favorably. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

And finally, Florida courts apply federal case law interpreting Title VII to FCRA claims because the FCRA was patterned after Title VII. *See Ranger Ins. Co. v. Bal Harbour Club, Inc.,* 549 So. 2d 1005, 1009 (Fla. 1989).

Because of these shared analyses, Cunningham's counts can be conceptually winnowed even further. They fit into four classes of claims: (1) Retaliation; (2) Disparate Treatment; (3) Due Process; and (4) Breach of Contract. The Court will address them in order.

## I.      Retaliatory Harassment Claims

Counts I, V, and VI—though alleging violations of different statutes—rest on the same legal theory: that Defendants subjected Cunningham to retaliatory harassment. To survive a motion to dismiss, Cunningham must allege sufficient factual content for the Court to draw the inference (1) that he engaged in a statutorily protected activity or expression, (2) that he suffered a materially adverse employment action, and (3) that there was some causal relation between the two events. *See Iqbal*, 556 U.S. at 678; *McCann,* 526 F.3d at 1375.

Cunningham has met this low burden. The amended complaint alleges that Cunningham spoke out at a School Board meeting on matters of public interest and that,

8

days later, he was transferred to another school and demoted from the position of principal

to that of social studies teacher. The amended complaint further alleges that this

employment action was done on account of his race and his exercise of free speech. These

allegations, if true, permit the Court to reasonably infer that Cunningham's expression and

transfer were causally related and that, consequently, the School Board was liable for the

misconduct alleged. *See Iqbal*, 556 U.S. at 678.

At this stage, the Court rejects Defendants' argument, on Cunningham's First

Amendment 1983 claim, that his speech was not First Amendment-protected speech. It is

true that "a public employee's right to freedom of speech is not absolute," *Bryson v. City

of Waycross*, 888 F.2d 1562, 1565 (11th Cir. 1989). This is because the state has unique

regulatory interests vis-a-vis its "employees:"

> [T]he state has interests as an employer in regulating the speech of its
> employees that differ significantly from those it possesses in
> connection with regulation of the speech of the citizenry in general.
> The problem in any case is to arrive at a balance between the interests
> of the [employee] as a citizen, in commenting upon matters of public
> concern and the interest of the state, as an employer, in promoting the
> efficiency of the public services it performs through its employees.

*Id.* (quoting *Pickering v. Bd. of Ed. Of Township High School Dist. 205, Will Cty.*, 391 U.S.

563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968)). Indeed, to balance these interests, the

Eleventh Circuit has adopted a four-part test to determine whether a state employer

retaliated against its employee because of speech. *See Erickson v. Hunter*, 932 F. Supp.

1380, 1382-83 (M.D. Fla. 1996) (citing *Tindal v. Butler*, 32 F.3d 1535, 1539-40 (11th Cir.

1994)).

However, only the first two parts of the test—(1) whether the speech was a matter of public concern, and (2) whether the employee's interest in the speech outweighed the state's interest in promoting efficient service—are questions of law for the Court to decide. *See Bryson*, 888 F.2d at 1565. Accepted as true and viewed in the light most favorable to Cunningham, *see Erickson*, 551 U.S. at 93-94, the amended complaint answers both questions in the affirmative. When evaluating whether particular speech is a matter of public concern, courts should look to "the main thrust of [the] speech" and ask whether the purpose of the "speech was to raise issues of public concern, on the one hand, or to further [] private interest, on the other." *Morgan v. Ford*, 6 F.3d 750, 754-55 (11th Cir. 1993). Stated differently, courts should evaluate whether the speech "centered around private matters, [or] matters of social interest." *Id.* at 755 (internal citations omitted).

Here, the amended complaint alleges that Cunningham addressed the School Board during the public comment period of a School Board meeting, during which time he spoke critically about "academic assessments, diminished district-wide achievement, and budgetary issues." Both the time and place in which the speech took place and its alleged subject matter suggest that Cunningham's speech was that of a citizen concerned with public matters, not of an employee concerned with private interests. *Compare Morgan*, 6 F.3d at 755 (holding that an employee's complaints of the sexual harassment *she* suffered were not public because they concerned her employment conditions and self-interests). In fact, as a principal in the school district, Cunningham was likely at least partially responsible for some of the conditions he criticized, which suggests that his statements

were, to a degree, against his own interests. As alleged, Cunningham's speech was a matter of public concern.

Likewise, the interest-balancing calculus favors Cunningham. On this question, context is critical. *See Bryson*, 888 F.3d at 1567 (finding that the determination may fall on the "time, place, and manner" of speech). If there is ever a time to voice concerns about the performance of a school district, the Court is strained to imagine a more appropriate time and place than during the public comment period of a School Board meeting. It is equally difficult to imagine how speech in this context affects "the efficiency of the public services [the School Board] performs through its employees." *Pickering*, 391 U.S. at 568. As alleged, Cunningham's First Amendment interest in his speech prevails over the regulatory interests of the School Board as his employer. Of course, this issue may be revisited at the summary judgment stage.

The Court also rejects Defendants' argument that Cunningham has not alleged that he suffered an adverse employment action. The amended complaint alleges that Cunningham was transferred—that is, "demoted"—to the position of high school teacher. The Eleventh Circuit has defined an adverse action as "a *serious* and *material* change in the terms, conditions, or privileges of employment." *Crawford*, 529 F.3d at 970-71 (emphasis in original) (quoting *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001)). Courts should objectively analyze the employment action, finding it adverse if it is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 126 S. Ct. 2405, 165 L. Ed. 2d 2405 (2006)).

School principal and teacher, it is clear, are both serious jobs. But they have materially different responsibilities and privileges. Teachers, for example, direct instruction in a classroom while principals direct policy for the entire school. Students report to teachers while teachers report to principals. Exasperated teachers threaten to send unruly students to the principal's office. There is a reason the threat does not work the other way around.

In light of these considerations, a reasonable teacher might very well consider a transfer from principal to teacher a demotion and, moreover, be dissuaded from making a claim of discrimination by the prospect of that transfer. Cunningham has sufficiently alleged an adverse employment action. *See Crawford*, 529 F.3d at 973 n. 13 ([In a Title VII or 1983 retaliation case,] "it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered 'materially adverse' to him and thus constitute adverse employment actions.") (quoting *Burlington*, 548 U.S. 53 at 71, 126 S. Ct. 2405).

For these reasons, Cunningham has adequately pled a prima facie case of retaliatory harassment in Counts I, V, and VI.

### *Municipal Liability*

In Count I, however, Cunningham failed to allege enough factual content to hold the School Board liable for that retaliation. Under 42 U.S.C. § 1983, the School Board, as a final policymaking authority under Florida law, *see* Fla. Stat. § 1001.41, is a liable "municipality" under Section 1983. *See Cuesta v. School Bd. of Miami-Dade Cnty., Fla.*, 285 F.3d 962, 966 (11th Cir. 2002). But a municipality cannot be held liable under Section

1983 for constitutional violations committed by its officer. *See Monell v. Dept. of Social Servs.*, 436 U.S. 658, 693-94, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Municipalities, in this case the School Board, can only be held liable if it "had a policy, custom, or practice that caused the deprivation." *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016). More specifically, municipalities can be held liable under three distinct theories. First, a municipality can be liable for its official enacted policies. *Id.* (internal citations omitted). Second, municipal liability can attach if final policymakers acquiesce to a longstanding practice that constitutes a standard operating procedure. *Id.* (internal citations omitted). And third, a municipality can be held liable "on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." *Id.* (quoting *Matthews v. Columbia Cnty.*, 294 F.3d 1294, 1297 (11th Cir. 2002). Under this third theory, the final policymaker "must ratify not only the decision itself, but also the unconstitutional basis for it." *Matthews*, 294 F.3d at 1297 (citing *Gattis v. Brice*, 136 F.3d 724, 727 (11th Cir. 1998)).

While any one of these theories will support municipal liability, conclusory or "naked allegations" are insufficient. *Id.* at 1280. A plaintiff must allege facts in support of a liability theory "that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A recent Eleventh Circuit opinion helps illustrate the distinction.

In *Hoefling*, a local mariner sued the city of Miami under Section 1983 for its alleged unlawful seizure and destruction of his boat. In reversing the district court's dismissal of

the complaint for failure to adequately allege municipal liability, the court cited to specific factual allegations in the complaint that met the motion-to-dismiss plausibility standard. *Hoefling*, 811 F.3d at 1280-81. First, on the night his boat was seized, the plaintiff received a call from a friend informing him that police were patrolling the water and "taking boats." *Id.* at 1280. Second, other local mariners complained to the plaintiff that their boats had suffered the same fate. And third, the plaintiff later learned that the city had a "cleanup" program to round up and destroy ugly boats. Based on these factual allegations, the court concluded that it could draw the reasonable inference that the city had a "policy, custom, []or practice" of unlawfully seizing and destroying private property. *Id.*

In reaching that decision in *Hoefland*, the Eleventh Circuit compared those factual allegations of municipal liability to allegations that were found insufficient in an earlier case, *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1328-30 (11th Cir. 2015). In *Weiland*, the plaintiff sought to hold a sheriff's office municipally liable for its officers' use of excessive force. There, the complaint broadly alleged that the Sheriff's Office had a policy or custom of not adequately training its officers and of covering up officer misconduct. Noting that the complaint never addressed similar instances of excessive force or cover ups, the Eleventh Circuit concluded that the alleged "policy" was a mere naked assertion. The court therefore affirmed the district court's dismissal of the 1983 claims against the Sheriff's Office.

This case is much more like *Weiland* than *Hoefland*. The amended complaint states that the School Board "condoned" and "ratified" Moxley Cunningham's retaliation. But without a factual allegation of the School Board's intent, this allegation does not state a

14

claim under the retaliation theory. *Matthews*, 294 F.3d at 1297. The amended complaint further states that Moxley and the School Board's actions "were purposeful, arose from an official policy or custom and/or were perpetrated and/or ratified by those having final decision-making authority with regard to the foregoing actions." (Dkt. 14, p. 5). While this allegation is a virtual parroting of the legal standard, it provides no factual basis from which the Court can plausibly infer that the standard, under any theory, has been met.

Cunningham has pled a prima facie case of retaliation, but his allegations of municipal liability are like the conclusory, naked allegations the Eleventh Circuit rejected in *Weiland*. This Court must likewise reject them here. Count I will be dismissed without prejudice.

On the contrary, respondeat superior is a viable theory of recovery—and indeed the only theory—under Title VII and the FCRA. *See Busby*, 931 F.2d at 772. Counts V and VI, which allege retaliation in violation of those laws, will not be dismissed.

## II.    Disparate Treatment Claims

In addition to their retaliation allegations, Counts V and VI allege disparate treatment on account of Cunningham's race. So does Count VII. However, as a 1983 claim, Count VII must properly allege municipal liability. It does not, instead making the same naked allegation that the Court already found insufficient in Count I. Count VII will be dismissed, without prejudice, for the same reasons.

To adequately state a claim of discrimination based upon disparate treatment, Cunningham must allege sufficient factual matter to show (1) that he belongs to a protected class, (2) that he was qualified to do the job, (3) that he was subjected to an adverse

employment action, and (4) that his employer treated similarly situated employees outside her class more favorably. *Crawford*, 529 F.3d at 970.

The amended complaint sufficiently alleges these elements. As an African-American, Cunningham meets the first element. *See e.g., Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997). Cunningham alleged that he has been a School Board employee for thirty years and had been, before his transfer, a principal for four. Cunningham further alleges that, during his time as principal, he was never disciplined for misconduct or poor performance. This factual content satisfies element two. The Court has already concluded that a transfer from principal to teacher may be an adverse employment action, and, therefore, element three is met. Finally, the Cunningham alleges that non-African-American employees have similarly criticized the School Board at meetings and did not suffer any employment consequences for their conduct. This allegation satisfies element four. Whether the allegation will be supported by proof is a matter for discovery and, perhaps, summary judgment.

In Counts V and VI, Cunningham has sufficiently stated a claim for disparate treatment. Those claims will not be dismissed.

### III.    Due Process Claims

Count II is a Section 1983 claim alleging that, when the School Board demoted Cunningham, it deprived him of property in violation of his due process rights. Count IV makes the same claim against Moxley in her official and individual capacities. While such causes of action may be brought against individuals and municipalities, *see Arrington v.*

*Cobb Cnty.*, 139 F.3d 865, 872 (11th Cir. 1998); *Cryder v. Oxendine*, 24 F.3d 175, 177

(11th Cir. 1994), both claims must fail as a matter of law.

First, although the claims do not specify whether they allege substantive or

procedural due process violations, the Court must construe them as alleging the latter. The

Eleventh Circuit has summarized why: "areas in which substantive rights are created only

by state law (as is the case with tort law and employment law) are not subject to substantive

due process protection under the Due Process Clause because 'substantive due process

rights are created only by the Constitution.'" *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th

Cir. 1994) (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229, 106 S. Ct. 507,

88 L. Ed. 2d 523 (1985) (Powell, J., concurring)).[3] In fact, the Eleventh Circuit has

repeatedly held that employment rights, like those at issue here, even if construed as

property rights, are not created by the Constitution. *See e.g., Laskar v. Peterson*, 771 F.3d

1291, 1297 (11th Cir. 2014); *Greenbriar Vill., L.L.C. v. Mountain Brook City*, 345 F.3d

1258, 1262 (11th Cir. 2003); *McKinney*, 20 F.3d at 1556. This leaves procedural due

process as Cunningham's only viable claim in Counts II and IV.

A Section 1983 procedural due process violation requires proof of three elements:

(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action;

and (3) constitutionally inadequate process. *Reams v. Irvin*, 561 F.3d 1258, 1267 (11th Cir.

2009).

---

[3] One exception would be for a legislative, versus executive, deprivation of a state-created right. *See McKinney*, 20 F.3d at 1557 n. 9.

The Court will assume without deciding that Cunningham's transfer-with-same-pay was a deprivation of a constitutionally-protected property interest. Cunningham's claims fail, in any event, because he received constitutionally adequate process as a matter of law. According to binding precedent, process cannot be inadequate when state remedies—to include judicial remedies—are available. *See Reams v. Irvin*, 561 F.3d 1258, 1267 (11th Cir. 2009); *McKinney*, 20 F.3d at 1565. In the case creating this rule, *McKinney v. Pate*, the Eleventh Circuit reviewed the due process claim of a terminated county official who alleged that his firing by the county board of commissioners was pretext and without justification. 20 F.3d at 1554-55. The court, sitting en banc, first found that Florida courts have the power to review and remedy employment termination cases. *Id.* at 1563. The court then rejected, as factually and legally unsupportable, the plaintiff's bald contention that state judicial review was an inadequate remedy. *Id.* And because the state did have the power to remedy any deficiency in the plaintiff's termination process, the court concluded, he "cannot claim that he was deprived of procedural due process." *Id.* at 1565

Here, the amended complaint broadly alleges that all remedial measures have been pursued. (Dkt. 14, p. 4). Yet as it did in *McKinney*, Florida law permits judicial appeals, on procedural due process grounds, of school board employment actions. *See generally Seiden v. Adams*, 150 So. 2d 1215 (Fla. 4th DCA 2014); *Schimenti v. School Bd. of Hernando Cnty.*, 73 So. 3d 831 (Fla. 5th DCA 2011). Procedural due process deprivation claims "will not be cognizable under [Section] 1983 if the state provides a means by which to remedy the alleged deprivation." *Foxy Lady, Inc. v. City of Atlanta*, 347 F.3d 1232, 1238 (11th Cir. 2003). Florida courts clearly do provide a means and, if appropriate, a remedy for the

School Board's employment decision concerning Cunningham's transfer. His recourse was to pursue those remedies there, not to file a 1983 claim in federal court. *See McKinney*, 20 F.3d at 1563. Counts II and IV will be dismissed with prejudice.

## IV.    Breach of Contract Claim

Under Florida law, a claim for breach of contract has three elements: (1) a valid contract; (2) a material breach; and (3) damages. Cunningham's final count, Count IX, alleges that the School Board materially breached the parties' employment contract when the School Board demoted him to the position of teacher. That count also alleges—albeit vaguely—that Cunningham has suffered damages as a result. Whether proof supports these allegations is a question that may be revisited at summary judgment.[4] Count IX will not be dismissed.

It is ORDERED AND ADJUDGED that:

1.    Defendants' Motion to Dismiss Amended Complaint (Dkt. 15) is GRANTED in part and DENIED in part.

2.    Counts I, III, VII, and VIIII are DISMISSED WITHOUT PREJUDICE.

3.    Counts II and IV are DISMISSED WITH PREJUDICE.

4.    Counts V, VI, and IX are not dismissed.

---

[4] In addition to the challenge of proving damages, the Court notes that the plain language of the employment contract appears to permit School Board transfers to positions other than principal. *See Day v. Taylor*, 400 F.3d at 1276 (permitting consideration of undisputed documents central to plaintiff's claim at the motion to dismiss stage). Allegations concerning the timing of the School Board's decision vis-à-vis Moxley's notification to Cunningham likely saved this count from dismissal.

5.      Defendants' motion to strike Plaintiff's request for punitive damages in

Counts III, IV, and VIII is DENIED as moot.

**DONE** and **ORDERED** in Tampa, Florida, this 3rd day of May, 2016.

_____

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record