# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

DAVID CUNNINGHAM,

    Plaintiff,

v.                                          Case No: 5:15-cv-480-Oc-30PRL

SCHOOL BOARD OF LAKE COUNTY,
FLORIDA and SUSAN MOXLEY,

    Defendants.

## ORDER

THIS CAUSE is before the Court on Defendants' Motion to Dismiss Counts I, II, V and VI of Plaintiff's Second Amended Complaint and Motion to Strike Claim for Punitive Damages (Doc. 24) and Plaintiff's Response in Opposition (Doc. 28). The Court, having reviewed the pleading, the motion, the response, and the applicable law, concludes the motion should denied.

## PROCEDURAL BACKGROUND

Plaintiff David Cunningham filed this lawsuit on September 21, 2015 (Doc. 1). It generally alleged that Defendants, School Board of Lake County (the "School Board") and Superintendent Susan Moxley, in her official capacity, deprived Cunningham of his constitutional rights, retaliated against him for having exercised those rights and on the basis of his race, treated him differently because of his race, and breached his employment contract. Cunningham amended his original complaint (Doc. 14) on February 12, 2016, to sue Moxley in her official and individual capacities.

The Court dismissed four counts of Cunningham's amended complaint without prejudice. (*See* Doc. 21). Those counts were claims against the School Board (Count I) and Moxley, in her individual and official capacity (Count III), for violating Cunningham's First Amendment right to free speech under 42 U.S.C. § 1983; and claims against the School Board (Count VII) and Moxley, in her individual and official capacity (Count VIII), for racial discrimination under §§ 1981 and 1983. The Court dismissed the claims against Moxley as duplicative. And, although Cunningham pled *prima facie* cases for retaliatory harassment (Count I) and disparate treatment (Count VII) against the School Board, those claims were dismissed because Cunningham failed to plead municipal liability.

In his second amended complaint[1] (Doc. 23), Cunningham reasserts the above claims against the School Board (Counts I and V) and Moxley, but solely in her individual capacity (Counts II and VI). Defendants seek to dismiss these four counts a second time. The Court will address Defendants' arguments, but, first, the Court recounts the allegations of the operative complaint, which the Court accepts as true for the purposes of this Order. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).

## FACTUAL BACKGROUND

**A. Allegations Carried Forward from Amended Complaint**

Cunningham is an African-American male who has been employed by the Lake County (Florida) Public Schools since 1983. In the summer of 2010, the School Board

---

[1] For simplicity's sake, the second amended complaint will hereinafter be referred to as the "operative complaint."

2

appointed Cunningham principal of Eustis Middle School. On July 1, 2014, the School Board renewed Cunningham's employment contract, which identified his position as "Principal-Middle," for a period of one year.

Cunningham's employment contract stated Cunningham would perform his services in the position of principal "in a school or applicable site as designated by the School Board." The contract also stated that "[t]he School Board may, upon recommendation of the Superintendent of Schools[,] transfer and assign [Cunningham] to a position in any other school or site of the district, provided that the salary" not be altered. The contract authorized Cunningham's termination or suspension "only for just cause."

Cunningham performed his duties as principal with distinction and was never, at any point during his tenure, disciplined or counseled. Yet on July 31, 2014, Moxley, unilaterally and without explanation reassigned Cunningham to the position of social studies teacher at another Lake County school. This transfer, though it did not alter his pay, was in fact a demotion and was done in retaliation for public remarks Cunningham made at a School Board meeting just days before. Those remarks concerned matters of public concern, such as "academic assessments, diminished district-wide achievement, and budgetary issues," and were germane to a school board meeting. In addition to the demotion being motivated by Cunningham's comments, the demotion also occurred because of Cunningham's race since non-African-American School Board employees regularly made critical comments at School Board meetings with no consequence.

The School Board and Moxley's actions were done with malice, reckless disregard, or reckless indifference to Cunningham's known rights to engage in free speech and to be

3

free from race discrimination. Further, the School Board's acts were the result of an official policy or ratification of Moxley's unconstitutional acts.

Cunningham appeared before the School Board in an effort to have Moxley's decision reversed, but the School Board voted to uphold the transfer. Cunningham later filed a complaint with the U.S. Equal Employment Opportunity Commission, which issued him a right-to-sue notice.

### B. Allegations New to Operative Complaint

In the operative complaint, Cunningham makes new allegations against both the School Board and Moxley. As to the School Board, Cunningham alleges the following:

- The School Board had a practice of allowing Moxley to take action that set policy for the School Board, either by inaction or tacit ratification, especially for personnel matters.

- The School Board delegated final decision making authority to Moxley.

- The School Board's review of Moxley's decision to demote him was so limited in scope as to constitute a "rubber stamping" of Moxley's decision.

- School Board members[2] publicly approved of Cunningham's demotion based on his remarks at the School Board meeting.

- The School Board refused to provide Cunningham with the basis for his demotion during its review of Moxley's actions.

---

[2] The operative complaint does not specify which members or how many.

4

- The School Board had a pattern and practice of retaliating against certain employees for engaging in free speech and treating employees differently based on their race.

Cunningham also added the following factual allegations against Moxley:

- Moxley is "legislatively charged with and appointed to make final personnel decisions," and that Cunningham was "under the general supervision of and subject to the direction of [Moxley]."

- Moxley refused to provide Cunningham with the basis for his demotion during the School Board's review of Moxley's action.

- Moxley orchestrated the unlawful treatment of Cunningham "to silence [Cunningham] and other employees for speaking out concerning academic assessments, diminished district-wide achievement, and budgetary issues."

- Moxley intentionally subjected Cunningham to disparate treatment based on his race, and Moxley did not retaliate against Caucasian employees who she frequently observed complain and vent about matters at School Board meetings.

## MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim on which relief can be granted. When reviewing a motion to dismiss, courts must limit their consideration to the well-pleaded allegations, documents central to or referred to in the complaint, and matters judicially noticed. *See La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (internal citations omitted); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Furthermore, they must accept all factual

5

allegations contained in the complaint as true, and view the facts in a light most favorable to the plaintiff. *See Erickson*, 551 U.S. at 93–94.

Legal conclusions, however, "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). In fact, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). To survive a motion to dismiss, a complaint must instead contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citations omitted). This plausibility standard is met when the plaintiff pleads enough factual content to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

## DISCUSSION

To paraphrase the Defendants' arguments regarding dismissal, they contend that (1) Cunningham generally failed to plead sufficient facts to establish claims upon which relief can be granted, (2) Moxley is entitled to qualified immunity (Counts II and VI), and (3) Cunningham failed to establish a claim for municipal liability that is plausible on its face (Counts I and V). Defendants also seek to strike Cunningham's claims for punitive damages against Moxley.

Defendants' first argument is rejected. For the reasons explained in the Court's prior Order (Doc. 21), Cunningham stated *prima facie* claims for retaliation and disparate treatment. That leaves only the questions of whether the claims against Moxley must be

dismissed based on qualified immunity and whether the operative complaint plausibly alleges a theory of municipal liability.

### A. Moxley's Qualified Immunity and Punitive Damages

The Eleventh Circuit has explained the defense of qualified immunity as follows:

> When government officials act in a way that knowingly violates a clearly established statutory or constitutional right of which a reasonable person would have known, they are not immune from suit and may be held liable for the damage their actions caused. But when these same officials make decisions that do not knowingly violate such rights, they are not required to defend themselves in a lawsuit seeking damages. They are "immune" from suit. We call this defense "qualified immunity" because the official is immune from a damage lawsuit, qualified upon his ability to show that he did not knowingly violate the plaintiff's clearly established constitutional right.

*Ray v. Foltz,* 370 F.3d 1079, 1081–82 (11th Cir. 2004) (internal citations omitted).

"To receive qualified immunity, 'the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004). Once a defendant demonstrates that the acts complained of were committed within the scope of his or her discretionary authority, "the burden then shift[s] to the [plaintiff] to show that qualified immunity should not apply because: (1) the [official] violated a constitutional right, and (2) that right was clearly established at the time of the incident." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1166 (11th Cir. 2009). "Qualified immunity is not appropriate where the officer's actions were objectively unreasonable: that is, under the facts and circumstances known to the officer at the time, his actions violated clearly established law." *Bates v. Harvey*, 518 F.3d 1233, 1242 (11th Cir. 2008).

A plaintiff withstands a motion to dismiss predicated on qualified immunity by alleging "sufficient facts to support a finding of a constitutional violation of a clearly established law." *Chandler v. Sec'y of Fla. Dep't of Transp.,* 695 F.3d 1194, 1198 (11th Cir.2012) (citing *Oliver v. Fiorino,* 586 F.3d 898, 905 (11th Cir.2009)); *see also Andreu v. Sapp,* 919 F.2d 637, 639 (11th Cir.1990) ("[T]he defendant is entitled to dismissal when the plaintiff has failed to allege a violation of a clearly established right.") (emphasis in original).

The Court concludes Cunningham satisfied his pleading burden.[3] As to the retaliation claim (Count II), the Supreme Court and Eleventh Circuit have recognized public employees' clearly established right to speak on matters of public concern well before Cunningham's demotion.[4] *Carollo v. Boria*, No. 15-11512, 2016 WL 4375009, at *8–9 (11th Cir. Aug. 17, 2016) (citing *Pickering v. Bd. of Ed. of Township High School Dist.*, 205, 391 U.S. 563 (1968), and *Garcetti v. Ceballos*, 547 U.S. 410 (2006)). Accepted as true, Cunningham's claim that Moxley "intentionally orchestrated [his demotion after speaking at the School Board meeting] in an effort to silence him and other employees for speaking out concerning academic assessments, diminished district-wide achievement, and budgetary issues" sufficiently alleges Moxley violated Cunningham's clearly established rights under the First Amendment.

---

[3] The Court assumes for the purposes of this analysis that Moxley's demotion of Cunningham was a discretionary act.

[4] Although not raised in this motion, Defendants previously argued Cunningham's speech was not First Amendment-protected speech. Accepting Cunningham's allegations as true, the Court again concludes the remarks are protected by the First Amendment. (*See* Doc. 21).

Likewise, the Court finds that Cunningham sufficiently pled Moxley violated his clearly established right to be free from racial discrimination (Count VI). "'It is beyond doubt' that there is a federal equal protection right to be free from racial discrimination, that this right is clearly established, and that it extends into the employment context." *Lawson v. Curry*, 244 F. App'x 986, 988 (11th Cir. 2007) (citing *Brown v. City of Fort Lauderdale,* 923 F.2d 1474, 1478 (11th Cir.1991)). Cunningham's claim that Moxley retaliated against him because of his race, and that Moxley did not retaliate against white employees who complained at School Board meeting sufficiently alleges Moxley violated Cunningham's clearly established right to be free from racial discrimination.

Having determined the claims against Moxley should not be dismissed, the Court must determine whether to strike Cunningham's claims for punitive damages against her. Defendants argue that the request for punitive damages should be stricken because Cunningham "made no factual allegations regarding any conduct of Moxley, that was unlawful, let alone any allegations to support a claim that she acted with 'malice or reckless indifference'…." (Doc. 24 at 7) (emphasis in original).

The Court rejects Defendants' argument. The Eleventh Circuit has explained that there is no heightened pleading standard for a claim of punitive damages, so the pleading standard of Federal Rule of Civil Procedure 8(a)(3) applies. *Cohen v. Office Depot, Inc.*, 184 F.3d 1292, 1298 (11th Cir. 1999), *opinion vacated in part on other grounds on reh'g,* 204 F.3d 1069 (11th Cir. 2000). Cunningham's allegations—that Moxley's intentional actions to silence him and treat him differently due to his race were "taken with malice or with reckless disregard and/or reckless indifference"—are sufficient to satisfy the pleading

9

requirement for punitive damage under Rule 8(a)(3). Accordingly, the Court denies Defendants' requests to strike Cunningham's claims for punitive damages against Moxley.

### B. School Board's Municipal Liability

A municipality can be held liable under § 1983 if it has "a policy, custom, or practice" that causes a constitutional deprivation. *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016). A plaintiff's conclusory or "naked allegations" are insufficient to establish liability. *Id.* at 1280. Instead, a plaintiff must allege facts supporting a liability theory "that is plausible on its face." *Id.*

Generally, a municipality cannot be held liable for the constitutional violations of its officers because municipal liability cannot be based on vicarious liability or *respondeat superior*. *Id.* at 1279; *see also Skop v. City of Atlanta*, 485 F.3d 1130, 1145 (11th Cir. 2007) (citing *Monell*, 436 U.S. at 694–95). However, the constitutional violations of municipal officers or employees can impose liability on the municipality under two theories relevant here. First, a government entity can be liable for the actions of an employee to whom it delegated final policymaking authority. *Willingham v. City of Valparaiso Florida*, 638 F. App'x 903, 907 (11th Cir. 2016) (citing *Holloman ex rel. Holloman v. Harland,* 370 F.3d 1252, 1292–93 (11th Cir.2004)). Second, a municipality can be held liable "on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." *Hoefling*, 811 F.3d at 1279.

While neither the operative complaint, nor Cunningham's response are a model of clarity, it appears Cunningham is attempting to allege municipal liability under both of

these theories. For the former, Cunningham alleges the School Board delegated its final policymaking authority to Moxley such that Moxley was, in essence, the School Board's proxy for personnel matters. For the latter, Cunningham alleges that the School Board ratified Moxley's unconstitutional decision.[5] Because the delegation theory is dispositive for ruling on Defendants' motion, the Court will only analyze it.[6]

As a threshold issue, Cunningham "must identify a municipal 'policy' or 'custom' causing the deprivation of federal rights." *Sauls v. Pierce Cty. Sch. Dist.*, 399 F.3d 1279, 1287 (11th Cir. 2005) (citing *Bd. of County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 403 (1997)). "There are three ways to show a governmental policy or custom: (1) an express policy; (2) a widespread practice so permanent and well-settled as to constitute a custom; or (3) the act or decision of a municipal official with final policy-making authority." *Carter v. DeKalb Cty., Ga.*, 521 F. App'x 725, 729 (11th Cir. 2013) (citing *Cuesta v. School Bd. of Miami–Dade Cnty.,* 285 F.3d 962, 966–68 (11th Cir. 2002)); *see also Quinn v. Monroe Cty.*, 330 F.3d 1320, 1325 (11th Cir. 2003) (holding, "Municipal liability may arise with regards to an employment decision, such as a termination, provided

---

[5] Although these allegations are inconsistent, that is not a fatal pleading defect. *See* Fed. R. Civ. P. 8(d)(2)–(3) (allowing for inconsistent, alternative pleading allegations).

[6] Although unnecessary for resolution of Defendants' motion, the Court notes that Cunningham failed to plead a plausible claim of municipal liability based on the ratification theory. The Court can find no allegations in the operative complaint to suggest the School Board ratified the decision to demote Cunningham based on his race. Moreover, there is no allegation that the entire School Board ratified both Moxley's decision and the allegedly unconstitutional bases for doing so. *See Matthews v. Columbia Cty.*, 294 F.3d 1294, 1297–98 (11th Cir. 2002).

that the decisionmaker 'possesses *final authority* to establish *municipal policy* with respect to the action ordered.'"). Cunningham's theory of liability rests on the latter.

A municipal employee does not have final policymaking authority if her decisions are subject to meaningful review. *Quinn*, 330 F.3d at 1325. In other words, the "mere delegation of authority to a subordinate to exercise discretion is not sufficient to give the subordinate policymaking authority." *Scala v. City of Winter Park,* 116 F.3d 1396, 1399 (11th Cir.1997). To prove a subordinate's decision was not subject to meaningful review, a plaintiff must show the municipality has "defective procedures, merely 'rubber stamps' the official's decisions, or ratified the official's decision and improper motive." *Maschmeier v. Scott*, 269 F. App'x 941, 944 (11th Cir. 2008) (citing *Quinn,* 330 F.3d at 1326; and *Scala,* 116 F.3d at 1402).

Although a close call, the Court concludes Cunningham has met his pleading burden under this theory. Cunningham pled that the School Board delegated final policymaking authority to Moxley for personnel matters. Cunningham also attached an excerpt from the School Board's manual indicating Cunningham was "under the general supervision of and subject to the direction of" Moxley. Cunningham further alleged that Moxley demoted him in violation of his constitutional rights after he spoke out at a School Board meeting. Cunningham alleged Moxley's decision to demote him was not subject to meaningful review because the review was "limited to the confines of School Board's policies and did not allow for an adjudication" of the constitutional deprivations that are the subject of this suit. Cunningham further alleged the School Board failed to respond to his inquiries during the review process or provide the basis for his demotion.

Viewed in the light most favorable to Cunningham, these allegations sufficiently allege (1) that the School Board delegated final policymaking authority to Moxley, (2) that Moxley violated Cunningham's constitutional rights when she decided to demote him, and (3) that the School Board's review of Moxley's decision was not meaningful because it was limited in scope and Cunningham was not provided the information he requested to challenge the decision. Accordingly, the Court concludes Cunningham sufficiently pled a theory of municipal liability that is plausible on its face to prevent dismissal of Counts I and V. Whether the allegations will be supported by proof is a matter for discovery and, perhaps, summary judgment.

It is ORDERED AND ADJUDGED that:

1. Defendants' Motion to Dismiss Amended Complaint (Dkt. 24) is DENIED.

**DONE** and **ORDERED** in Tampa, Florida, this 20th day of September, 2016.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record